# Exhibit 1

| Summons | CIVIL DOCKET NO. 2872 CV 000 58 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

CASE NAME:

Jose Carlos da Silva Teixeira, Junior,                    Plaintiff(s)

vs.

Hyannis Air Service, Inc. d/b/a Cape Air and Overseas Manpower Solutions, Corp.                    Defendant(s)

Susan L. Moran    Clerk of Courts
Barnstable    County

COURT NAME & ADDRESS:
BARNSTABLE SUPERIOR COURT

3195 MAIN STREET

BARNSTABLE, MASSACHUSETTS 02630

THIS SUMMONS IS DIRECTED TO    Hyannis Air Service, Inc. d/b/a Cape Air    (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this Summons and the original Complaint has been filed in the Barnstable Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**    TRUE COPY ATTEST

DEPUTY SHERIFF    5/7/2025

**1. You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the Court may decide the case against you and award the Plaintiff everything asked for in the Complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

**2. How to Respond.**

To respond to this lawsuit, you must file a written response with the Court **and** mail a copy to the Plaintiff's attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your signed original response with the Clerk's Office for Civil Business, Barnstable Superior Court 3195 Main St, Barnstable, MA 02630  (address), by mail, in person, or electronically through the web portal www.eFileMA.com if the Complaint was e-filed through that portal, **AND**

   b) Delivering or mailing a copy of your response to the Plaintiff's attorney/Plaintiff at the following address: Fair Work PC. c/o Rachel Smit , 192 South St Ste 450, Boston MA 02111

**3. What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in Court. If you have any claims against the Plaintiff (referred to as "counterclaims") that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Court no more than 10 days after sending your Answer.

**3. (cont.)** Another way to respond to a Complaint is by filing a "Motion to Dismiss," if you believe that the Complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Rule 12 of the Massachusetts Rules of Civil Procedure.** If you are filing a Motion to Dismiss, you must follow the filing rules for "Civil Motions in Superior Court," available at:

www.mass.gov/law-library/massachusetts-superior-court-rules

**4. Legal Assistance.**

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

**5. Required Information on All Filings.**

The "Civil Docket No." appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Michael D. Ricciuti , Chief Justice on _____ , 20 ___ . (Seal)

Clerk    Susan L. Moran

Note: The docket number assigned to the original Complaint by the Clerk should be stated on this Summons before it is served on the Defendant(s).

---

### PROOF OF SERVICE OF PROCESS

I hereby certify that on _____ , I served a copy of this Summons, together with a copy of the Complaint in this action, on the Defendant named in this Summons, in the following manner (See Rule 4(d)(1-5) of the Massachusetts Rules of Civil Procedure):

_____

_____

_____

Dated: _____          Signature: _____

N.B.   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date:

rev. 1/2023

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

BARNSTABLE, ss.                                    Civil Action No.

|  |  |
|---|---|
| JOSE CARLOS da SILVA TEIXEIRA, JUNIOR, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) ) |
| HYANNIS AIR SERVICE, INC. d/b/a CAPE AIR and OVERSEAS MANPOWER SOLUTIONS, CORP., | ) ) ) ) |
| Defendants. | ) ) ) |

## **COMPLAINT AND JURY DEMAND**

### Introduction

1.     This lawsuit is brought by Jose Carlos da Silva Teixeira, Junior ("Plaintiff"), to recover wages owed to him by his former employer, Hyannis Air Service, Inc., doing business as Cape Air ("Cape Air").

2.     Cape Air has violated the Massachusetts Wage Act, the Massachusetts Minimum Fair Wage Law, and the federal Fair Labor Standards Act by demanding that Plaintiff kick back his wages to Cape Air under the guise of a training repayment provision ("TRAP").

3.     Cape Air and its foreign pilot recruiting agency, Overseas Manpower Solutions, Corp. ("Overseas Manpower"), also used deceptive and coercive techniques

1

to lock Plaintiff into various illegal contracts in violation of Massachusetts and federal forced labor statutes.

4.    Plaintiff seeks compensatory and punitive damages for Defendants' attempts to force him to perform labor under the threat of serious harm.

5.    Plaintiff seeks a declaration that Cape Air's offer letter, which was presented to him for signature only after he had paid thousands of dollars of his own money on a nonrefundable basis, is an illegal employment contract under Massachusetts law.

6.    Plaintiff seeks a declaration that a recruiting agreement he was required to sign with Overseas Manpower, which was first presented to him months after he had signed Cape Air's offer letter, is unlawful and unenforceable.

7.    Plaintiff seeks a declaration that the amount of $50,000, which Cape Air is seeking to collect from him through a third-party debt collector, is an unlawful and unenforceable penalty.

8.    Plaintiff seeks a declaration that the amount of $15,000, which Overseas Manpower may seek to collect from him under the Recruiting Agreement, is an unlawful and unenforceable penalty.

9.    Plaintiff further seeks to enjoin Cape Air and its debt collector from seeking to collect on the $50,000.

10.    Plaintiff seeks recovery of his reasonable attorneys' fees and costs, as well as all other relief to which he is entitled.

## Parties

11.     Plaintiff Jose Carlos da Silva Teixeira, Junior, is an adult citizen of Brazil. He currently resides in Broward County, Florida. From April 2024 until September 2024, Plaintiff was employed by Cape Air as a pilot in Barnstable County, Massachusetts.

12.     Defendant Hyannis Air Service, Inc. d/b/a Cape Air is a Massachusetts corporation with a principal office in Barnstable County, Massachusetts.

13.     From April 2024 through September 2024, Cape Air was Plaintiff's employer, and Plaintiff was a non-exempt employee, within the meaning of the Massachusetts wage laws and the federal Fair Labor Standards Act

14.     Defendant Overseas Manpower Solutions, Corp. is a Florida corporation with a principal place of business in Palm Beach County, Florida. Shayne Epstein is an immigration attorney who serves as the President and Treasurer of Overseas Manpower. Epstein also serves as the President of The Epstein Group ("Epstein"), Epstein's immigration law firm, which is a Florida corporation with a principal place of business in the office building next door to Overseas Manpower.

## Jurisdiction and Venue

15.     Jurisdiction is proper in this Court pursuant to G.L. c. 212, §§ 3 and 4, because this is a civil action for money damages and there is a reasonable likelihood that recovery by the Plaintiff will exceed $50,000.

16.     Venue is proper in Barnstable County pursuant to G.L. c. 223, § 1, and G.L. c. 265, § 51(d), because Cape Air has its usual place of business in Barnstable County.

3

17.     This Court has personal jurisdiction over Defendant Overseas Manpower pursuant to G.L. 223A, § 3.

## Facts

18.     In March 2021, Plaintiff completed a short online form to initiate the process of applying to Overseas Manpower's program for foreign pilots.

19.     Plaintiff applied for the position of Captain, having almost two decades of experience as a pilot in both Brazil and China.

20.     At that time, Plaintiff already possessed an Airline Transport Pilot ("ATP") certificate from the U.S. Federal Aviation Administration ("FAA").

21.     In October 2021, Plaintiff received an email from Overseas Manpower describing the steps he would need to take to be hired as a pilot through the program.

22.     The first step was to join a waiting list at The Epstein Group, the immigration law firm utilized by Overseas Manpower. In order to proceed to the next step in in the process, Plaintiff was required to fill out a questionnaire and upload documents to a "client portal," using this link:

https://www.eimmigration.com/Epstein.Law/Client/

23.     The second step was a Zoom presentation, which Plaintiff attended on October 14, 2021. This was a required step that Plaintiff was required to complete before getting an interview with an airline.

24.     After the Zoom presentation, Plaintiff was invited to apply for a position with Cape Air.

4

25.     On October 27, 2021, Plaintiff received an email from Cameron Withrow, the Director of Pilot Industry Relations & Sourcing for Cape Air, inviting him to sign up for an interview slot.

26.     Withrow himself conducted the interview with Plaintiff on October 29, 2021, using Microsoft Teams. This was the third step in the process.

27.     On November 1, 2021, Withrow emailed Plaintiff to let him know that his application would proceed, and that Cape Air would "extend an official offer of employment when you have been scheduled for your final consular interview. The consular office requires offer letters to be dated within the previous 30 days of your interview, so we will wait until that time to send you an official offer letter."

28.     The next day, Plaintiff received an email from the Law Office of Shayne Epstein, described as a division of The Epstein Group, outlining the steps he would need to take to proceed with his immigration case.

29.     One of those required steps was to sign a retainer with Defendant Shayne Epstein and his law office ("Epstein").

30.     The retainer required Plaintiff to pay Epstein a flat attorneys' fee of $26,050, inclusive of a $6,000 non-refundable fee.

31.     Plaintiff paid the $6,000 non-refundable fee on November 10, 2021.

32.     On or around December 28, 2021, Epstein submitted an Application for Permanent Labor Certification to the United States Department of Labor ("USDOL") on behalf of Cape Air and Plaintiff.

5

33.     In signing the Application, Plaintiff swore under penalty of perjury that "I intend to accept the position offered in Section H of this application if a labor certification is approved and I am granted a visa or an adjustment of status based on this application."

34.     More than a month after Epstein had submitted the required paperwork with USDOL, on February 18, 2022, Plaintiff received a letter from Overseas Manpower describing a temporary suspension of Cape Air's foreign pilot program. A copy of the letter is attached as Exhibit A.

35.     The February 18, 2022, letter states that Cape Air "intends to take immediate steps and report pilots to U.S. immigration authorities in cases where Cape Air suspects that the pilot obtained an immigrant visa to work for Cape Air without the genuine intent to do so."

36.     The letter states that "a failure to complete the agreed-upon employment term with Cape Air (12 months) may be construed by USCIS as evidence that you lacked such intent."

37.     The letter concludes by stating that "[a]s a result of Cape Air's announcement, to remain in the program, all pilots currently in process will be required to execute new amended agreements which contain additional language and terms for pilots that do not honor the contract."

38.     At the time he received this letter, the only agreement Plaintiff had been presented with was the retainer agreement with Epstein, to represent him in his immigration case.

Date Filed 2/7/2025 6:54 PM
Superior Court - Barnstable
Docket Number

39.    On April 26, 2022, Plaintiff received an email from Overseas Manpower, stating that "Cape Air has announced the suspension of the Pilot Program may be **lifted effective immediately**. . . The final version of the Cape Air offer letter is still under review by Cape Air's legal team, but it is our hope that it will be finalized in the coming days" (emphasis in original).

40.    On May 2, 2022, Plaintiff received a copy of the Cape Air Offer Letter ("Offer Letter"), a copy of which is attached as Exhibit B.

41.    The Offer Letter states that "Cape Air has extended the time and financial resources to provide you with FAA [Federal Aviation Administration] approved training necessary for you to serve as a competent and respected Line Captain for Cape Air. However, to achieve this result involves a significant financial investment by Cape Air so that you and others may have this opportunity. . . You agree that if you resign, intentionally fail a written test or check ride, or are terminated with cause before twelve (12) months of service, you will be required to repay to Cape Air the sum of FIFTY-THOUSAND DOLLARS and xx/100 ($50,000.00)."

42.    The training described in the letter is Part 135 training, which Cape Air is required by the FAA to have all new hires complete in order to operate as a Part 135 carrier.

43.    Part 135 refers to 14 C.F.R. Part 135, a federal regulation that applies to operators of charter planes in interstate, foreign, or overseas transportation or carrying mail and that have 30 or fewer seats or a maximum payload capacity of 7,500 pounds.

7

44.  Federal regulations require Part 135 carriers to have all newly-hired pilots undergo operator-specific training, which must be approved by the FAA, for the airplane they were hired to fly, regardless of whether pilots have flown those planes previously, and regardless of their prior experience.

45.  At the time Plaintiff was first presented with the Offer Letter, Plaintiff had already signed paperwork submitted to USDOL stating under penalties of perjury that he intended to accept any offer of employment from Cape Air.

46.  At the time Plaintiff was first presented with the Offer Letter, Plaintiff had already paid a non-refundable fee of $6,000 to Epstein.

47.  Plaintiff genuinely believed he had no viable alternative but to sign the Offer Letter.

48.  A few months later, on July 13, 2022, Plaintiff received a request from Overseas Manpower to sign a Recruiting Agreement, a copy of which is attached as Exhibit C.

49.  The Recruiting Agreement required Plaintiff to agree to pay a "Termination Fee" of $15,000 if he breached the agreement, a breach being defined to include the failure to complete twelve months of employment with Cape Air.

50.  On August 26, 2022, Plaintiff paid Epstein the balance due under his retainer agreement, in the amount of $20,060.

51.  On September 12, 2022, Epstein submitted the Form I-140, Immigrant Petition for Alien Worker, to the United States Customs and Immigration Service ("USCIS").

8

52.    On April 4, 2023, Overseas Manpower emailed Plaintiff to let him know that they had developed a new "case filing strategy" to bypass the "visa retrogression" issues that ostensibly had been delaying approval of Plaintiff's visa.

53.    The new strategy involved refiling the Form I-140 in the Skilled Worker category, at a cost of $3,545 in filing fees.

54.    On July 20, 2023, Plaintiff received an email from Epstein indicating that his Form I-140 had been approved.

55.    On December 14, 2023, Overseas Manpower represented in an email to the U.S. Consulate in Brazil that Cape Air "is currently facing a substantial shortage of skilled workers" and that Plaintiff's work would be "critical" and "crucial" for Cape Air to provide "Essential Air Service (EAS) to 17 remote airports."

56.    In March 2024, Plaintiff completed the required consular interview in Rio de Janeiro, at which point his green card was finally approved.

57.    In April 2024, Plaintiff started Cape Air's Part 135 training in Barnstable County, Massachusetts.

58.    The first month of the training consisted of ground school, which Plaintiff completed with a cohort of approximately 10 other pilots.

59.    The next phase of the Part 135 training consisted of approximately 8 hours of flying with a Cape Air flight instructor.

60.    Due to the weather, this local training took about a month for the cohort of pilots to complete.

61.    The third phase of the training was line training, which lasted for about 4 days.

62.    During Part 135 training, Plaintiff was paid $22 per hour for 40 hours weekly.

63.    Cape Air's Part 135 training did not provide Plaintiff with a portable credential, because he will need to undergo similar FAA-required training if he is hired as a pilot for any other U.S.-based carrier.

64.    On June 28, 2024, Plaintiff was released to the line, to start his term of employment with Cape Air.

65.    Plaintiff's compensation at this point remained $22 per hour, per the Offer Letter.

66.    Shortly after Plaintiff was released to the line, he experienced two serious accidents that he believed would have been prevented by better safety protocols and procedures on the planes he was flying.

67.    Plaintiff began to worry about the condition of the planes he was flying, and the safety of both himself and his passengers.

68.    Plaintiff filed internal safety reports with Cape Air's Safety Department, and repeatedly expressed his concerns to Cape Air's Chief Pilot, but to the best of his knowledge, no corrective actions were taken.

69.    In September 2024, Plaintiff heard of a Cape Air plane malfunctioning during landing at Boston's Logan Airport.

70.    Upon hearing this news, Plaintiff requested to be released from his employment agreement, a request which Cape Air denied.

71.    Plaintiff was not willing to put his life and reputation, or the lives of his passengers, on the line, and submitted his formal resignation to Cape Air on or around September 20, 2024.

72.    On or around December 30, 2024, Plaintiff received a letter from Weltman, Weinberg, and Reis, Co., a third-party debt collection agency, informing him that Cape Air had turned over his account to collections, and that he owed $50,000.

73.    On information and belief, the $50,000 figure is grossly disproportionate to the actual cost of providing Plaintiff with Part 135 training and the actual revenue that Plaintiff generated for Cape Air.

74.    On information and belief, the only reason that Cape Air set the contract penalty amount at $50,000 was because it believed that this was an amount that was sufficient to deter pilots from terminating their contracts early, not because the $50,000 represented a reasonable estimate of Cape Air's anticipated damages.

75.    The amount that pilots allegedly owe to Cape Air is the same, regardless of whether they have completed one month or eleven months of flying for Cape Air.

76.    Around the same time that Cape Air revised its offer letter for the position of Captain, Cape Air was issuing offer letters to First Officers, who did not yet have their ATP certificates and would be unable to fly solo until they obtained their ATP certificates, with training repayment provisions indicating that the cost of training such a pilot was $30,000.

77.     On information and belief, the only reason that Part 135 training for a Captain might be more costly to Cape Air than the same training for a First Officer is because Cape Air pays Captains a higher hourly rate during the Part 135 training.

78.     By requesting "repayment" of training expenses, Cape Air is seeking to claw back wages it already paid to Plaintiff, as punishment for resigning from his employment with Cape Air before hitting the twelve-month mark.

79.     This violates the Massachusetts Wage Act's prohibition on special contracts and the assignment of future wages.

80.     This also constitutes a demand that Plaintiff return his wages to Cape Air, which would result in Plaintiff retaining less than the Massachusetts minimum wage of $15 per hour.

81.     This also violates the Fair Labor Standards Act, which requires employers to pay wages "free and clear."

82.     The cost of Cape Air's Part 135 training is an expense that must be borne by the employer under Massachusetts law and the Fair Labor Standards Act.

83.     Cape Air's Part 135 training does not provide captains with a portable credential.

84.     Part 135 training is for the benefit of Cape Air, not Plaintiff, because without it, it cannot operate as a Part 135 carrier.

85.     Cape Air cannot be deemed to have paid Plaintiff the federal minimum wage for all hours worked because his wages were not paid "finally and unconditionally."

12

86.     None of Plaintiff's wages were paid "finally and unconditionally," and, therefore, he was paid an effective wage rate of $0 per hour, in violation of the Massachusetts Minimum Fair Wage Law and the Fair Labor Standards Act.

87.     The $50,000 repayment obligation included in Cape Air's Offer Letter is an unlawful and unenforceable contract penalty under Massachusetts law.

88.     Plaintiff's assent to the provisions in the Offer Letter was obtained using deceptive and coercive practices, including the threat to report foreign pilots to immigration enforcement authorities.

89.     Cape Air's Offer Letter is an illegal employment contract, within the meaning of G.L. c. 265, § 49.

90.     Cape Air's attempt to enforce this illegal employment contract, by turning over Plaintiff's alleged debt to a debt collector, constitutes an abuse of law or legal process and a threat to cause serious financial harm within the meaning of G.L. c. 265, § 49, and 18 U.S.C. § 1589.

91.     Plaintiff's assent to the provisions of Overseas Manpower's Recruitment Letter was obtained using deceptive and coercive practices.

92.     The requirement that Plaintiff pay Overseas Manpower $15,000 upon early termination of his employment with Cape Air is an unenforceable penalty clause, because it is grossly disproportionate to Overseas Manpowers' actual costs, where Plaintiff has already paid no less than $26,060 out of pocket for Epstein's services in obtaining the appropriate visa to work for Cape Air.

93.     On information and belief, the $15,000 amount was established by Overseas Manpower because it believed that this was an amount, in conjunction with the $50,000 penalty clause in Cape Air's Offer Letter, that was sufficient to deter pilots from terminating their contracts early, not because the $15,000 represented a reasonable estimate of Overseas Manpower's anticipated damages.

94.     The Recruitment Agreement is an illegal employment contract within the meaning of G.L. c. 265, § 49.

95.     Defendant Cape Air's refusal to address Plaintiff's safety concerns, instead relying on its illegal employment contract to compel his continued labor for the company, caused Plaintiff significant emotional distress.

## COUNT I – MASSACHUSETTS WAGE ACT
### (Wage Act Claim)

96.     Plaintiff alleges and incorporates by reference all previous paragraphs.

97.     Defendant Cape Air violated the Massachusetts Wage Act, G.L. c. 149, §§ 148 and 150, by entering into an unlawful special contract with Plaintiff that required him to assign future wages to Defendants.

98.     Defendant Cape Air failed to pay Plaintiff his earned wages "free and clear."

99.     This claim is brought pursuant to G.L. c. 149, § 150, against Defendant Cape Air to recover all damages incurred, lost wages and other benefits, treble damages, attorneys' fees and costs, interest, and any other relief available to Plaintiff.

## COUNT II – MASSACHUSETTS MINIMUM FAIR WAGE LAW
### (Massachusetts Minimum Wage Claim)

100.    Plaintiff alleges and incorporates by reference all previous paragraphs.

101.    Defendant Cape Air violated G.L. c. 151, § 19(5), by demanding that Plaintiff return his wages to Cape Air, which would result in Plaintiff retaining less than the minimum fair wage of $15 per hour for all hours worked.

102.    This claim is brought pursuant to G.L. c. 149, § 150, and G.L. c. 151, § 20, against Defendant Cape Air to recover all damages incurred, lost wages and other benefits, loss of minimum wage, treble damages, attorneys' fees and costs, interest, and any other relief available to Plaintiff.

## COUNT III – FAIR LABOR STANDARDS ACT
### (Federal Wage Claim)

103.    Plaintiff alleges and incorporates by reference all previous paragraphs.

104.    Cape Air  violated the minimum wage provisions of the FLSA.

105.    Because Cape Air failed to pay wages "finally and unconditionally," Cape Air cannot be deemed to have met the wage requirements of the FLSA, which includes the requirement to pay no less than the federal minimum wage for each hour worked.

106.    Cape Air's actions constitute willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

107.    Plaintiff brings this claim pursuant to 29 U.S.C. § 216(b) against Defendant Cape Air to recover all unpaid minimum wages plus an additional equal amount in liquidated damages, costs of suit, and reasonable attorneys' fees.

15

## COUNT IV – COMMERCIAL EXPLOITATION OF PEOPLE ACT
### (Massachusetts Forced Labor Claim)

108.    Plaintiff alleges and incorporates by reference all previous paragraphs.

109.    Defendant Cape Air knowingly attempted to subject Plaintiff to forced services as defined by G.L. c. 265, § 49, in violation of G.L. c. 265, § 51.

110.    Defendant Overseas Manpower is a "business entity that knowingly aids or is a joint venturer in trafficking of person for forced labor" under G.L. c. 265, § 51(d).

111.    Plaintiff brings this claim against both Defendants pursuant to G.L. c. 260, § 4D(a) and G.L. c. 265, Section 51(d), to recover actual damages, compensatory damages, punitive damages, injunctive relief, and any other appropriate relief.

## COUNT V – FEDERAL FORCED LABOR STATUTE
### (Federal Forced Labor Claim)

112.    Plaintiff alleges and incorporates by reference all previous paragraphs.

113.    Defendants' conduct, as set forth above, violates the federal statute prohibiting forced labor, Chapter 77 of the U.S. Code.

114.    Defendants violated 18 U.S.C. § 1589(a) by knowingly providing and obtaining the labor of Plaintiff by means of threats of serious harm, by means of the abuse or threatened abuse of law or legal process, and by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if he did not perform labor for Cape Air, he would suffer serious harm.

115.    Defendants violated 18 U.S.C. § 1594(a) by attempting to provide and obtain the labor of Plaintiff by means of threats of serious harm, by means of the abuse or threatened abuse of law or legal process, and by means of a scheme, plan, or pattern

16

intended to cause Plaintiff to believe that, if he did not perform labor for the company, he would suffer serious harm.

116.    This claim is brought pursuant to 18 U.S.C. § 1595 against both Defendants.

## JURY DEMAND

Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff respectfully requests this Court to:

A.    Award treble damages to Plaintiff for his lost wages pursuant to G.L. c. 149, § 150;

B.    Award damages to Plaintiff for his emotional and mental distress pursuant to G.L. c. 149, § 150;

C.    Award damages to Plaintiff for all minimum wages owed to him under the Massachusetts Minimum Fair Wage Law, G.L. c. 151, §§ 2, 20;

D.    Award damages to Plaintiff for all minimum wages owed to him under the FLSA;

E.    Award statutory liquidated damages to Plaintiff under the FLSA;

F.    Award actual damages to Plaintiff pursuant to G.L. c. 260, § 4(d)(a);

G.    Find that Defendants' acts were willful and malicious and award treble damages to Plaintiff pursuant to G.L. c. 260, § 4(d)(a);

H.    Award compensatory damages to Plaintiff pursuant to G.L. c. 260, § 4(d)(a);

I.    Award punitive damages to Plaintiff pursuant to G.L. c. 260, § 4(d)(a);

17

J.      Award damages to Plaintiff, including compensatory damages and
punitive damages, pursuant to 18 U.S.C. § 1595;

K.      Declare that Cape Air's Offer Letter is an illegal employment contract
under Massachusetts law;

L.      Declare that Overseas Manpower's Recruiting Agreement is unlawful and
unenforceable;

M.      Declare that the amount of $50,000, which Cape Air is seeking to collect
from him through a third-party debt collector, is an unlawful and
unenforceable penalty under Massachusetts law;

N.      Declare that the amount of $15,000, which Overseas Manpower may seek
to collect from Plaintiff under the Recruiting Agreement, is an unlawful
and unenforceable penalty;

O.      Enjoin Cape Air and its debt collector from seeking to collect on the
$50,000;

P.      Grant any other injunctive and declaratory relief to further the purpose of
the forced labor statutes;

Q.      Award attorneys' fees and costs to Plaintiff pursuant to G.L. c. 149, § 150;
G.L. c. 260, § 4(d)(a); and 18 U.S.C. § 1595(a);

R.      Award pre- and post-judgment interest to Plaintiff; and

S.      Grant such other relief as is just and proper.

Date Filed 2/7/2025 6:55...
Superior Court - Barnstable
Docket Number

JOSE CARLOS DA SILVA TEIXEIRA, JUNIOR,

By his attorney,

/s/Rachel Smit
Rachel Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 841-8188
rachel@fairworklaw.com

Dated: February 7, 2025

19

# EXHIBIT A



February 18, 2022

Dear All:

We are saddened to learn that Cape Air has decided to temporarily suspend its foreign pilot recruitment program. Cape Air has advised that this suspension is effective immediately and applies to all candidates that have not entered the United States. Cape Air has advised OMS that this suspension results from too many pilots in the program violating the terms of sponsorship and, in some cases, engaging in an action USCIS may consider visa fraud by applying for an immigrant visa based on Cape Air's sponsorship without the bona fide intent to work for Cape Air. It's unfortunate that the actions of a few have caused this suspension and jeopardized the future of the program.

As you know, U.S. immigration law requires that you, as the beneficiary of an immigrant visa petition, genuinely intend to accept a permanent full-time position with the sponsoring company— in this case, Cape Air. And as you know, a failure to complete the agreed-upon employment term with Cape Air (12 months) may be construed by USCIS as evidence that you lacked such intent. As such, Cape Air has told us it intends to take immediate steps and report pilots to U.S. immigration authorities in cases where Cape Air suspects that the pilot obtained an immigrant visa to work for Cape Air without the genuine intent to do so.

As a result of Cape Air's announcement, to remain in the program, all pilots currently in process will be required to execute new amended agreements which contain additional language and terms for pilots that do not honor the contract. These changes will have no legal impact on pilots that fulfill the contractual commitment. It is our expectation that 100% of the pilots that join our program will honor the work commitment, no exceptions.

We will hold a Zoom meeting in the near future to discuss these matters, and will be in touch shortly with the Zoom meeting details.  In the meantime, our staff is available to address your questions.

Sincerely,

Alan Jacoby

1359 East Sample Road, Pompano Beach, Florida 33064
Office: (954) 785-8252 Fax: (954) 942-1130
www.overseasmanpower.com

# **EXHIBIT B**

CAPE AIR

May 2, 2022

**VIA EMAIL**

REDACTED                          RE: OFFER OF EMPLOYMENT

Dear NAME:  DA SILVA TEIXEIRA JUNIOR, JOSE CARLOS

On behalf of Cape Air, a 14 CFR Part 135 Air Carrier (HYIA 145B), we are pleased to present our company's Offer of Employment whereby, upon completing Cape Air's Federal Aviation Administration ("FAA") approved training program, you will serve as a full-time Line Captain. By accepting this offer and serving in this position, you shall report directly to Cape Air's System Chief Pilot, David O'Connor.

The final step in the employment process is pending Human Resources' ("HR") clearance based upon the results of a ten-year criminal background check, pre-employment drug and alcohol testing, I-9 compliance, labor certification that requires Cape Air to demonstrate an insufficient number of qualified US pilots, a Pilot Records Improvement Act (PRIA) background check, and your execution of this Offer of Employment.  As part of the consideration of extending this Offer of Employment, Cape Air requires the execution of a Conditional Prommisory Note (attached hereto as Exhibit "A") that serves as your financial obligation to Cape Air, should you fail to honor your responsibilities pursuant to this agreement.  It is your responsibility to notify Cape Air of any changes in your training record and/or criminal record after the issuance of this Offer of Employment.  Failure to do so will result in rescinding this offer.  Other than enforcement of your commitments as set forth herein, and in the attached document, once you are employed with Cape Air, the terms of your employment will be governed by the Collective Bargaining Agreement (CBA), as agreed upon by Cape Air and the certified union representative for its pilots, the International Brotherhood of Teamsters.

Compensation:  Your rate of pay will be $22.00 per hour, payable bi-weekly, consistent with the CBA, less applicable taxes. Before accepting this Offer of Employment, you should carefully consider the income necessary to support yourself and your family, if applicable.

Initial Base Location:  Your employment will begin in Hyannis, Massachuetts.  Future base relocation to some other part of the United States is common in the industry, as well as Cape Air, and when and where you are relocated is determined by your seniority as set forth in the CBA.   Before accepting this Offer of Employment, you should carefully consider the implications that base relocation will have on your life and assure you are able and willing to relocate to any base Cape Air serves.   This determination is made by a bidding process as set forth in the CBA after your arrival for in-person training Relocation assistance of up to $200.00 will be provided after your arrival in Hyannis, MA.

Make and Model of Aircraft:  Cape Air operates three models of twin engine, piston aircraft which all carry up to nine passengers -- the Cessna 402, Tecnam P2012 Traveller, and Britten-Norman Islander (BN2). You can expect to be trained on the Cessna 402 initially but may be required to get qualified on the other aircraft models depending on your base assignment.  We would respectfully request that you give this Offer of Employment serious consideration based upon the make and model of aircraft to which you may be assigned. If your level of flight proficiency and experience is at a level that serving as Captain of a Cessna 402 causes any form of unpleasentness, please do not accept this Offer of Employment.

Flight Uniform and Headset:  The company shall issue new Pilots two (2) pairs of pants, two (2) shirts, epaulets, a sweater, windbreaker, hat, and a choice of a three-season jacket or parka offered by the Company.

Page 2 of 6

After one-year of continuous employment Pilots are eligible for uniform replacement. You will be responsible to purchase your own aircraft headset.

Housing:  Relocation assistance is guided by Section 6 (Relocation and Related Expenses) of the CBA. Pilots are generally provided up to two (2) relocation allowances per year for voluntary moves. Additional relocation allowance will be allowed for involuntary displacements. Pilots shall be paid a relocation allowance based on statute mileage between their previously assigned base and their new base.  . During any ground school training, Cape Air will pay for a hotel room typically at the Hyannis Holiday Inn.

*See*:  https://www.ihg.com/holidayinn/hotels/us/en/hyannis/hyahi/hoteldetail  You are not required to stay at the Holiday Inn.  However, if you prefer to stay at another local hotel, the cost will be borne by you.

Ground School Training:  In-Doc and flight training has been approved by the FAA takes a varied amount of time dependent upon weather, the availability of instructors, and your current skill level in Cape Air's aircraft.  Your initial training as a Captain may take up to three (3) months.

Financial Resources Provided:  Cape Air has extended the time and financial resources in order to provide you with FAA approved training necessary for you to serve as a competent and respected Line Captain for Cape Air. However, to achieve this result involves a significant financial investment by Cape Air so that you and others may have this opportunity.  We are certain in accepting this Offer of Employment that you will not take this significant expenditure in your aviation career lightly.   In return for Cape Air's investment, you shall agree to serve as a line Captain for a minimum of twelve (12) months commencing on the day you have completed your training. While your commitment to Cape Air post-training is twelve (12) months, your then position at completion of the commitment period shall, remain available to you for an indefinite period. You agree that if you resign, intentionally fail a written test or check ride or are terminated with cause prior to completing twelve (12) months of service, you will be required to repay to Cape Air the sum of FIFTY-THOUSAND DOLLARS and xx/100 ($50,000.00). Further, you agree that this payment does not represent a penalty, or puntitive damages, but rather, represents a sum certain to which you are henceforth obligated based upon a small percentage of the costs extended by Cape Air for your training and housing. As set forth above, the twelve (12) month period of employment shall commence on your first day of service as a Line Captain and shall be tolled for any period that you are unable to work due to authorized leaves of absence or the Family and Medical lease Act, up to a maximum tolling of one (1) year. This twelve (12) month period begins only after any necessary training.

You acknowledge that Cape Air has limited space in its highly sought after and desirable training programs and, by agreeing to enter the program, you acknowledge Cape Air is devoting limited enrollment space and resources to your training.

Promissory Note. You will not be required to repay training or housing costs if Cape Air terminates your employment at any time prior to the completion of your twelve (12) month commitment of service as a Line Captain due to furlough or reasons which would not constitute cause; or, if you complete your twelve (12) months of service as set forth herein. Should you voluntarily terminate your relationship with the Company, or should you be terminated for cause, prior to completing twelve (12) months of service as a Line Captain, you will also not be eligible for rehire for any future positions in the Cape Air Flight Department.  This ineligibility will be reflected in any future PRIA background checks.   Should you decide to resign from the company after fulfilling your commitment, we respectfully request a two-week notice.

You understand that if you resign or are terminated with cause prior to the earlier of (a) completing twelve (12) months of service as a Captain with Cape Air, or (b) completed twenty-four (24) months of

Page 3 of 6

employment with Cape Air, you will be required to repay the reasonable costs and training investment in your training which, for the purposes of this agreement is acknowledged to be fifty-thousand dollars ($50,000). The twenty-four month period of employment shall commence on your date of hire and shall be tolled for any period that you are unable to work due to authorized leaves of absence or FMLA, up to a maximum tolling of one (1) year.

This letter and the attached Promissory Note set forth memorializes entire agreement regarding your commitment to Cape Air which are in total conditions of this Offer of Employment. Upon receiving your signed original copy, this letter will become part of your permanent employment record at Hyannis Air Service, Inc. You further acknowledge that you have not signed any agreements that would prevent you from being employed by Cape Air in the position offered. You further acknowledge that you do not have any negative criminal or immigration background that would prevent Cape Air from being successful with your visa process. This Offer of Employment contains an expiration date of ten (10) calendar days from date of receipt due to Cape Air's need to timely fill its flight school class. However, if you require more time to consider this Offer of Employment, including speaking to an attorney regarding the legal implications of this Offer of Employment, or should you have any other questions or comments regarding this Offer, please contact the undersigned.

Confidentiality. All information pertaining to any of Cape Air's unpublished written materials, plans, processes, processing, costs, training methods, shall be considered as confidential and proprietary to Cape Air and shall not be disclosed whatsoever, or discussed on social media, or group messaging apps including, but not limited toe WhatsApp or Slack.

Contact with Third-Party Air Carriers. Please be advised that Cape Air has been a part of the aviation community over thirty (30) years. It has relationships with most of the commercial 14 C.F.R Part 121 regional and major air carriers, including those that provide domestic, flag and supplemental operations (the "Air Carriers"). Cape Air would consider it an anticipatory breach of the terms and conditions of this agreement as set forth herein should, while having not yet completed your service to Cape Air, you contact any of these Air Carriers seeking employment as a pilot for a time period prior to the completion of your obligations to Cape Air.

Governing Law. This Agreement will be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Massachusetts.

Jurisdiction. Line Captain hereby irrevocably agrees and submits to the non-exclusive jurisdiction of any state court located in the State of Massachusetts, and you also waive any objection based on *forum non conveniens* and any objection to venue of any such action or proceeding. Venue shall lie in Barnstable County, Massachusetts.

**WAIVER OF JURY TRIAL. EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE AND EACH PARTY HEREBY CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE**

Page 4 of 6

**DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS AGREEMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENTS OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.**

        <u>Attorneys' Fees.</u>  In the event Cape Air is required to enforce the terms and conditions of this Offer of Employment, should Cape Air prevail in its action, it is entitled to the recovery of all its costs and reasonable attorneys' fees, including the costs of any appeal should it be applicable.

        We hope this opportunity aligns with your career goals and that you choose to accept this Offer of Employment. If this Offer of Employments and Conditional Promissory Note attached as Exhibit A meets with your approval, please sign where indicated and return this original letter and Promissory Note to HR using the contact information on the top right.

Sincerely yours,

*Cameron Withrow*

Cameron Withrow
Director, Pilot Industry Relations & Sourcing

        I have reviewed this Offer of Employment and/or consulted with legal counsel with regard my responsibilites persuant to the terms and conditions set forth herein.   Based upon my thorough review of this document, and the attached Conditional Promissory Note, by affixing my signature below, I hereby ACCEPT Cape Air's Offer of Employment.

| | |
|---|---|
| Your Signature: | Date: May 2, 2022 |

EXHIBIT A

<u>**CONDITIONAL PROMISSORY NOTE**</u>

        This Conditional Promissory Note ("Note") dated ___May 2, 2022___ by and between **CAPE AIR** (the "Operator") and ___DA SILVA TEIXEIRA JUNIOR, JOSE CARLOS___ (the "Pilot") hereby agree as follows:

<u>RECITALS</u>

Page 5 of 6

May 2, 2022

*WHEREAS*, on _____ the Pilot unconditionally and without exceptions accepted the Operator's Offer of Employment ("Employment Agreement").

*WHEREAS*, the Employment Agreement was a vehicle for the Employee to work in the United States for an employer sponsor – the Operator;

*WHEREAS*, employer sponsor met the requirements of U.S. Citizens and Immigration Services to sponsor an Employee's immigration petition and employment based visa;

*WHEREAS*, the Employment Agreement set forth certain specific Terms and Conditions that the Employee must meet, or he/she would be in breach of the Employment Agreement. The Employment Agreement also provided how the Pilot would fulfill its obligations thereunder whereby this Note would be null and void;

*WHEREAS*, among other Terms and Conditions, Pilot shall satisfactory complete his/her training and, serve as a Line Captain for Operator for a minimum period of twelve (12) months;

*WHEREAS*, in order to secure the employment from the Operator, the Pilot agrees, in the event of his/her breach of the Employment Agreement this Note is enforceable as stated herein;

*WHEREAS*, both the Operator and Pilot agree that the Offer of Employment is incorporated by reference into this Note as if fully set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements herein contained, the parties agree as follows

In the event of a breach of the Employment Agreement by the Pilot, the Pilot shall pay the Operator as the holder of this Note FIFTY THOUSAND DOLLARS and xx/100 ($50,000.00).

This Note shall be in default if any obligation of Pilot under the Employment Agreement or otherwise is not fully performed. Upon default in this Note, the Operator, at its option, *may* extend the term of the Note, declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand. In addition to payments of Interest and Principal, if there is a default in this Note the Operator shall be entitled to recover from the Pilot all of the Operator's costs of collection, including the Operator's reasonable attorneys' fees, paralegal fees and legal assistants' fees (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals or otherwise), and all other costs incurred in connection therewith. All payments hereunder shall be made in lawful money of the United States of America

The Pilot hereby: (a) waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note; (b) consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after default, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing; (c) agree to any substitution, exchange, addition or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon; (d) agree that the Operator shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note; and, (e) agree that, notwithstanding the occurrence of

Page 6 of 6

any of the foregoing (except by the express written release by Operator of any such person), the undersigned shall be and remain, jointly and severally, directly and primarily, liable for all sums due under this Note.

The Pilot (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Note may be brought, at the option of the Operator, in a court of record of the State of Massachusetts, in Barnstable County, or in any other court of competent jurisdiction; (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which he/she may have to the laying of venue of any such suit, action or proceeding in any of such courts.

The term Operator as used herein shall mean any holder of this Note. Time is of the essence in this Note. If any provision or portion of this Note is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Note, and the remaining provisions and portions thereof shall continue in full force and effect. This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized officer of the Operator. Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

Pilot represents it has consulted with competent legal counsel before executing this Conditional Promissory Note or has voluntarily waived his/her right to do so.

IN WITNESS WHEREOF, this Conditional Promissory Note been executed by the undersigned as of the Effective Date as set forth above.


DA SILVA TEIXEIRA JUNIOR, JOSE CARLOS
_____
Your Name (printed):

_____
DA SILVA TEIXEIRA JUNIOR, JOSE CARLOS (May 2, 2022 19:46 ADT)
Your Signature:

May 2, 2022
_____
Date:

Date Filed 2/7/2025 6:54 PM
Superior Court - Barnstable
Docket Number

# EXHIBIT C



## RECRUITMENT AGREEMENT

THIS RECRUITMENT AGREEMENT ("Agreement") is made this <u>Jul 13, 2022</u> by and between <u>Jose Carlos da Silva Teixeira Junior</u>, an individual, (hereinafter referred to as "Employee") and Overseas Manpower Solutions, Corp., a Florida corporation, hereinafter referred to as ("Recruiter") (the Employee together with Recruiter, may also be referred to herein as the "Parties," and each singularly as "Party").

## RECITALS

*WHEREAS*, the Employee desires to seek employment in the United States ("U.S.") as a qualified airline pilot;

*WHEREAS*, the Recruiter has the capability of referring qualified pilots to Cape Air, a 14 C.F.R. Part 135 on-demand air carrier ("Cape Air") based in Hyannis, Massachusetts for potential employment and sponsorship;

*WHEREAS*, the Recruiter shall serve as the exclusive Recruiter of Employee pursuant to the terms and conditions of this Agreement;

*WHEREAS*, the Employee agrees to being sponsored and employed by Cape Air;

*WHEREAS*, the Employee acknowledges Recruiter shall expend substantial resources in capital and effort that will enable Employee to work in the United States for Cape Air;

*WHEREAS,* under no circumstance shall Employee consider his/her employment with Cape Air to be "temporary" or "transient" in nature;

*WHEREAS*, Cape Air meets U.S. Citizen and Immigration Services ("USCIS") requirements to sponsor Employee's I-140 permanent residency "Green Card petition and/or non-immigrant work visa;

*WHEREAS,* the Employee acknowledges this is a Recruitment Agreement and that Employee will need legal counsel to assist in the filing process with USCIS;

*WHEREAS,* the Employee acknowledges he/she will be required to execute a Retainer Agreement with outside legal counsel, and that the costs and legal fees is an additional cost not covered by this Agreement;

*WHEREAS*, the Employee acknowledges that he/she will be required to execute a Letter Agreement with the Cape Air whereby the terms and conditions of that Agreement shall require

4-19-22 OMS Pilot Agreement

Employee to serve as an aircraft line pilot for the airline for twelve (12) months upon completing flight training; and,

*WHEREAS,* the Employee acknowledges it shall not engage in conduct detrimental to Cape Air by seeking any airline related employment until completing the terms of the Cape Air Employment Agreement.

NOW, THEREFORE, in consideration of the above Recitals, which shall constitute part of this Agreement, and of the following mutual promises, covenants, and conditions, the parties agree as follows:

1. RECRUITER'S OBLIGATIONS:

    1.1. Recruiter shall communicate with and provide reasonable support to Employee and his/her legal counsel throughout the immigration process.

    1.2. Recruiter shall request Cape Air to sponsor Employee for an employment-based permanent resident visa (a "Green Card") and/or non-immigrant work visa.

    1.3. Recruiter shall coordinate with immigration counsel to facilitate the I-140 process and issuance of lawful permanent residency for Employee, the spouse and unmarried children that are 21 years of age and younger.

    1.4. Subject to the terms and conditions of this Agreement, receiving Cape Air's offer for employment, State and Federal Regulations, and upon Employee meeting I-9 compliance, Cape Air intends to employ Employee on a full-time basis subject to the terms and conditions of an Employment Agreement between Employee and Cape Air.

    1.5. The specific terms of employment terms shall be negotiated between Employee and Cape Air.

2. RECRUITER SHALL NOT:

    2.1 Provide any form of employment for Employee's Spouse or dependents.

    2.2 Provide any form of ground or air transportation to and from your place of residence to your place of employment.

    2.3 Pay for any testing/training requirements, by either the USCIS, the Federal Aviation Administration, or Cape Air.

    2.4 Charge any fees to Employee for the services herein being provided, other than for a default by the Employee as set forth herein.

4-19-22 OMS Pilot Agreement

3. <u>EMPLOYEE'S DUTIES AND OBLIGATIONS:</u>

3.1 At all times, Employee shall abide by all applicable U.S. state and federal laws, policies and regulations including U.S. Citizenship and Immigration Services ("USCIS").

3.2 Employee shall obtain an FAA Aircraft Transport Pilot rating at his/her own cost and expense.

3.3 Employee shall work on a full-time basis for Cape Air as a Line Pilot and shall not terminate that employment prior to completing 12 months of operating experience as a Line Pilot subsequent to any training and orientation. The pilot shortage is significant in the U.S. and Employee should be aware that after Cape Air's sponsorship and approval of Employee's visa, he/she will become a highly sought-after pilot with many opportunities to fly newer larger aircraft at a higher wage. However, Employee shall fulfill the 12 month employment commitment made to Cape Air which is the basis of the visa approval. Be advised that breach by the Employee of the Cape Air Employment Agreement will have significant financial and professional consequences.

4. <u>EMPLOYEE COOPERATION; LEGAL COMPLIANCE:</u>

4.1 Employee represents and affirms that he/she is not otherwise inadmissible to the U.S. and has never committed fraud or otherwise lied to a US government official.

4.2 Employee shall cooperate fully with Cape Air, the Recruiter and legal counsel with respect to all aspects of this Agreement, including using Employee's best efforts to expeditiously deliver all requested documentation.

4.3 Employee shall arrive in the U.S. within sixty (60) days from the effective date of the employment based visa.

4.4 Employee shall advise Recruiter and Cape Air when he/she arrives in the United States.

4.5 Employee shall pay for his/her own travel expenses. Employee must possess adequate funds, or the financial resources to support himself/herself prior to beginning employment with Cape Air. Likewise, since the wage is modest compared to pilots with supplemental, scheduled, and flagship air carriers, Employee understands that the wage paid by Cape Air will be insufficient to support dependents. Wages paid by Cape Air are sufficient to support the Employee only. If applicable, Employee must possess adequate funds or financial resources to support any dependents while employed with Cape Air.

4.6 Employee shall, keep Recruiter informed of changes in physical and email addresses, and a current cellular telephone number.

4.7 Employee agrees that he/she shall not work with any other Recruiter, within or outside the U.S. as it relates to the I-140 or any other work related visa.

4-19-22 OMS Pilot Agreement

4.8 Employee permits Recruiter to provide personal information to Cape Air or counsel.

5.  <u>ADDITIONAL MUTUAL TERMS EFFECTIVE UPON EMPLOYMENT:</u>

Upon offer and commencement of employment, the following additional terms will apply:

5.1 Employee shall perform the employment with Cape Air and agrees to be assigned to a geographical area as may be directed by Cape Air. The geographic location of employment is entirely at the discretion of Cape Air and is determined by seniority, and its Collective Bargaining Agreement with the Teamsters Union (CBA). You acknowledge that you could be relocated to other locations in the U.S. determined by your seniority and the CBA bidding process. You should speak with Cape Air about the CBA, bidding process, wages, and aircraft type to assure you are comfortable accepting Cape Air's offer of employment. If you have dependents, you should consider how you will manage any required relocation. In the unlikely event that Employee's performance is deemed to be inadequate by Cape Air, it retains the right to call the Employee in default, or as an alternative, but not a requirement, to place the Employee in an aircraft best suited for his/her capabilities, or through an affiliate it may request Recruiter to place Employee elsewhere.  In such an event, you hereby agree to allow Cape Air and/or Recruiter to find suitable employment elsewhere during this 12 month period.

5.2 Employee unequivocally agrees to continue performance under this Agreement at such location that Cape Air deems appropriate.

5.3 The parties anticipate that the Employment, in an immigrant visa context shall be ongoing, long lasting and continue indefinitely and/or permanently without a set end date for full-time employment, subject to the termination provisions contained in this Agreement.

5.4 All information pertaining to any of Recruiter's intellectual property, trade secrets, inventions, designs, tools, equipment, unpublished written materials, plans, processes, costs, methods, systems, improvements, or other private matters known to the Employee during the Employment which is obtained by Employee in the performance of Employee's work and which is not publicly disclosed by Recruiters hall be considered as confidential and proprietary to Recruiter, the entity who supplies or provides such information. Employee shall not distribute any confidential and proprietary information to any third-party in any form of communication. E.g. web chats, email, etc.

6.  <u>BREACH OF AGREEMENT.</u>

6.1 Fees – Breach of Agreement by Employee/Termination for Cause.

Employee acknowledges and understands that the Recruiter, on behalf of the Employee is expending substantial resources in time and costs by placing the Employee with Cape Air, and that financial impact (in the form of compensatory and consequential damages) resulting from the Employee's breach of this Agreement is substantial. However, it has

4-19-22 OMS Pilot Agreement

been agreed by Employee and Recruiter, should Employee breach this Agreement, or be terminated for cause as set forth in Section 6.3 herein, Employee agrees to a fixed termination fee ("Termination Fee") of USD $15,000.00. Employee acknowledges this amount is not a penalty or buy-out, but rather reasonably relates to a small percentage of the costs extended by the Recruiter in placing the Employee with Cape Air.

6.2 Attached is a conditional Promissory Note (Exhibit "A") in the amount of the Termination Fee, and to be executed contemporaneously with the execution of this Agreement. The Conditional Promissory Note is valid from the date of execution of this Agreement and is null and void immediately upon the Employee fulfilling his/her 12 month obligation to Cape Air.

6.3 Definition of Cause. For the purposes of this Agreement, Termination for "Cause" shall mean the following (inclusive of, but not limited to), in the reasonable judgment of Cape Air: (1) Employee is in breach of any of the terms and  conditions of his/her Cape Air Employment Agreement; (2) Employee fails to perform Employee's duties to the satisfaction of Cape Air; (3) Employee is not qualified to perform the services intended by Cape Air; (4) Employee is prohibited by the FAA from working and/or his/her required pilot's license is revoked or suspended; (5) Employee is absent or tardy with unreasonable frequency, determined in the sole discretion of Employer; (6) Employee is unsuitable for Employment, or unable to pass training as determined in the sole discretion of Employer; (7) Employee intentionally fails any ground or flight test; (8) Employee seeks employment with any other US based air carrier with the intent of accepting employment prior to the completion of Employee's Employment Agreement with Cape Air; (9) Employee refuses to accept the prevailing wage and/or Employment with Cape Air; (10) any breach of the terms and conditions of this Agreement; and/or (10) any other grounds for cause as determined by Recruiter and/or Cape Air.

6.4 Right to Set Pay Rate and Employment. Cape Air as the Employer retains the right, in its sole discretion, to set the pay rate of Employee either equal to or above the prevailing wage as determined by the CBA, and to choose the location of Employment for Employee. Failure by the Employee to accept a pay rate equal to or above the prevailing wage as determined by the CBA constitutes a material breach of the Agreement.

7. MISCELLANEOUS PROVISIONS:

7.1 Entire Agreement. This Agreement, and any Exhibits attached hereto, constitutes the entire Agreement between the Parties, and no representation, warranties or promises – either oral or written – unless contained herein, shall be binding upon the Parties hereto, their respective heirs and assigns. Any change or modification in the terms and conditions hereof shall be in writing and signed by both Parties. Any prior agreements, promises, negotiations, or representations of or between the Parties, either oral or written, relating to the subject matter of this Agreement which are not expressly set forth in this Agreement are null and void and of no force or effect. Further this Agreement shall inure to the benefit of and be binding upon the Parties, their successors and permitted assigns.

4-19-22 OMS Pilot Agreement

7.2 <u>Choice of Law</u>. This Agreement shall be governed and interpreted in accordance with the law of the State of Florida, without regard to the conflict of law provisions thereof, and the parties agree and consent to jurisdiction in, and governing law of, Florida. Venue shall lie in Broward County, Florida.

7.3 <u>Dispute Resolution</u>. This Agreement supersedes all previous agreements and constitutes the entire Agreement between the Parties. No oral statements or prior written material not specifically incorporated herein shall not have any force and effect.

7.4 <u>Covenant Disputes.</u> Notwithstanding the foregoing, disputes involving confidentiality, non-solicitation or non-competition provisions (such provisions collectively "Covenants") and for which injunctive relief is sought, for which the Employee acknowledges there is no adequate remedy at law, such Covenant disputes shall be adjudicated solely in the State of Florida, County of Broward.

7.5 <u>Attorneys' Fees</u>. In the event either Party is required to enforce the terms and conditions of this Agreement, the prevailing Party is entitled to the recovery of all its costs and reasonable attorneys' fees, including the costs of any appeal should it be applicable.

7.6 <u>Severability.</u>  In the event that any provision of this Agreement is held to be invalid, or unenforceable, the remainder of the provisions of this Agreement will remain in full force and effect.

7.7 <u>Waiver.</u>  In the event that a Party waives any provision of this Agreement, such waiver shall not be deemed to have waived that provision at any other time or to have waived any other provision.  This Agreement may be executed in one or more counterparts, each of which shall be designated as an original hereof for all purposes.  This instrument contains the entire agreement of the Parties, except at otherwise expressly noted herein and may not be changed orally, but only by an amendment in writing signed by the Parties.

7.8 <u>Adequate Independent Review.</u>  By signing this Agreement, Employee acknowledges and agrees that: (a) Employee has been given sufficient time to review and consider signing this Agreement; (b) Employee is fluent in English and has carefully read and understands the terms of this Agreement; (c) has sought independent legal counsel if he or she desires; (d) has not relied on any statement or representation of Recruiter not expressly set forth herein; (e) agrees there are fair and reasonable damages associated with any breach or termination with cause; and, (f) Employee has signed this Agreement freely and voluntarily, without duress or coercion, and with full understanding and acceptance of its terms and conditions and their legally binding force and effect.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the day and year written above.

[SIGNATURES ON FOLLOWING PAGE]

4-19-22 OMS Pilot Agreement

EMPLOYEE:

Jose Carlos da Silva Teixeira Junior (Jul 13, 2022 12:31 ADT)

Signature:

Jose Carlos da Silva Teixeira Junior

Printed Name:

RECRUITER:

Signature:
Alan Jacoby, President
Overseas Manpower Solutions, Corp.

Page 7 of 10

4-19-22 OMS Pilot Agreement

EXHIBIT A

## CONDITIONAL PROMISSORY NOTE

    This Conditional Promissory Note ("Note") dated the <u>Jul 13, 2022</u> ("Effective Date") by and between **OVESEAS MANPOWER SOLUTIONS, CORP.** (the "Recruiter") and <u>Jose Carlos da Silva Teixeira Junior</u> (the "Employee") hereby agree as follows:

## RECITALS

    *WHEREAS,* on the <u>Jul 13, 2022</u>, the Employee unconditionally and without exceptions executed the Recruiter's Agreement ("Recruitment Agreement").

    *WHEREAS,* the Recruitment Agreement sets forth certain conditions in which the Employee may work in the United States for an Employer Sponsor – Cape Air;

    *WHEREAS,* Employer Sponsor Cape Air met the requirements of U.S. Citizens and Immigration Services to sponsor an Employee's I-140 petition and employment based permanent residency visa ("Green Card");

    *WHEREAS,* the Recruitment Agreement set forth certain specific Terms and Conditions that the Employee must meet, or he/she would be in breach of the Recruitment Agreement. The Recruitment Agreement also provided how the Employee would fulfill its obligations thereunder whereby this Note would be null and void;

    *WHEREAS,* among other Terms and Conditions, Employee shall satisfactory complete his/her training, and serve as a Line Captain for Cape Air for a minimum period of twelve (12) months;

    *WHEREAS,* in order to secure employment with the Employer Sponsor Cape Air, the Employee agrees, in the event of his/her breach of the Recruitment Agreement and/or the Cape Air Employment Agreement, to execute this Note to reimburse the Recruiter for the time and expense associated for the services provided. This Note is separate and distinct from any damages that might be sought by the Employer Sponsor Cape Air for Employee's breach of the Employment Agreement;

    *WHEREAS,* both the Recruiter and Employee agree that the Recruitment Agreement is incorporated by reference into this Note as if fully set forth herein.

    **NOW, THEREFORE,** in consideration of the mutual covenants and agreements herein contained, inclusive of the Recitals as if fully set forth herein, the parties agree as follows

    In the event of a breach of the Employment Agreement by the Employee, the Employee shall pay the Recruiter as the holder of this Note FIFTEEN THOUSAND DOLLARS and xx/100 (USD $15,000.00).

4-19-22 OMS Pilot Agreement

So long as no default has occurred in this Note, there is no interest accumulating. Upon the date of breach of the Recruitment Agreement or the Cape Air Employment Agreement, the Employee shall pay the per annum rate of fifteen (15%) percent (the "Default Rate").

This Note shall be in default if any obligation of Employee under the Recruitment Agreement and/or the Cape Air Employment Agreement is not fully performed. Upon default in this Note, the Recruiter, at its option, *may* extend the term of the Note, declare the entire unpaid Principal balance of this Note, together with accrued Interest, to be immediately due and payable without notice or demand in a single lump-sum payment. In addition to the payment of Interest and Principal, if there is a default in this Note, the Recruiter shall be entitled to recover from the Employee all of the Recruiter's costs of collection, including the Recruiter's reasonable attorneys' fees, paralegal fees and legal assistants' fees (whether for services incurred in collection, litigation, bankruptcy proceedings, appeals or otherwise), and all other costs incurred in connection therewith. All payments hereunder shall be made in lawful money of the United States of America

The Employee hereby: (a) waives presentment for payment, demand, notice of demand, notice of non-payment or dishonor, protest and notice of protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note; (b) consent to all extensions of time, renewals, postponements of time of payment of this Note or other modifications hereof from time to time prior to or after default, whether by acceleration or in due course, without notice, consent or consideration to any of the foregoing; (c) agree to any substitution, exchange, addition or release of any of the security for the indebtedness evidenced by this Note or the addition or release of any party or person primarily or secondarily liable hereon; (d) agree that the Recruiter shall not be required first to institute any suit, or to exhaust its remedies against the undersigned or any other person or party to become liable hereunder or against the security in order to enforce the payment of this Note; and, (e) agree that, notwithstanding the occurrence of any of the foregoing (except by the express written release by Recruiter of any such person), the undersigned shall be and remain, jointly and severally, directly and primarily, liable for all sums due under this Note.

The Employee (a) agrees that any suit, action or other legal proceeding arising out of or relating to this Note may be brought, at the option of the Recruiter, in a court of record of the State of Florida, in Broward County, or in any other court of competent jurisdiction; (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which he/she may have to the laying of venue of any such suit, action or proceeding in any of such courts.

The term Recruiter as used herein shall mean any holder of this Note. Time is of the essence in this Note. If any provision or portion of this Note is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Note, and the remaining provisions and portions thereof shall continue in full force and effect. This Note may not be amended, extended, renewed or modified nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by an authorized officer of the Recruiter. Any waiver of any provision hereof shall be effective only in the specific instance and for the specific purpose for which given.

4-19-22 OMS Pilot Agreement

Employee represents it has had the opportunity to consult with competent legal counsel before executing this Conditional Promissory Note or has voluntarily waived his/her right to do so.

IN WITNESS WHEREOF, this Conditional Promissory Note been executed by the undersigned as of the Effective Date as set forth above.

EMPLOYEE: _Jose Carlos da Silva Teixeira Junior_____

_Jose Carlos da Silva Teixeira Junior (Jul 13, 2022 13:31 ADT)_____
Signature

Date: _Jul 13, 2022_____

4-19-22 OMS Pilot Agreement

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | COUNTY Barnstable Superior Court (Barnstable) |

| Plaintiff: Jose Carlos da Silva Teixeira, Junior | Defendant: Hyannis Air Service, Inc. d/b/a Cape Air |
|---|---|
| ADDRESS: 5620 NW 61st St, Apt 1208 | ADDRESS: 660 Barnstable Rd |
| Coconut Creek, Florida 33073 | Hyannis, MA 02601 |
| | |
| Plaintiff Attorney: Rachel Smit | Defendant: Overseas Manpower Solutions, Corp. |
| ADDRESS: Fair Work, P.C. | ADDRESS: 2201 NW Corporate Blvd, Ste 108 |
| 192 South St, Ste 450 | Boca Raton, FL 33431 |
| Boston, MA 02111 | |
| BBO: 688294 | |

## TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A01 | Services, Labor, and Materials | F | ☒ YES  ☐ NO |

*If "Other" please describe: _____

Is there a claim under G.L. c. 93A?                    Is there a class action under Mass. R. Civ. P. 23?
☐ YES    ☒ NO                                        ☐ YES    ☒ NO

### STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

    1. Total hospital expenses _____

    2. Total doctor expenses _____

    3. Total chiropractic expenses _____

    4. Total physical therapy expenses _____

    5. Total other expenses (describe below) _____

    Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date _____ $35,728.00

C. Documented property damages to date _____

D. Reasonably anticipated future medical and hospital expenses _____

E. Reasonably anticipated lost wages _____ $75,000.00

F. Other documented items of damages (describe below)

Emotional distress and punitive damages

    TOTAL (A-F): $110,728.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

| Signature of Attorney/Self-Represented Plaintiff: X Rachel Smit | Date: February 7, 2025 |
|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION UNDER S.J.C. RULE 1:18(5)

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney: X Rachel Smit | Date: February 7, 2025 |
|---|---|

# CIVIL ACTION COVER SHEET INSTRUCTIONS —
## SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

### AC Actions Involving the State/Municipality †*

AA1 Contract Action Involving Commonwealth,
Municipality, MBTA, etc.                                    (A)
AB1 Tortious Action involving Commonwealth,
Municipality, MBTA, etc.                                    (A)
AC1 Real Property Action Involving
Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
Municipality, MBTA, etc.                                    (A)
AE1 Administrative Action Involving
Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials                 (F)
A02 Goods Sold and Delivered                        (F)
A03 Commercial Paper                                     (F)
A04 Employment Contract                               (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1  (F)
A06 Insurance Contract                                   (F)
A08 Sale or Lease of Real Estate                   (F)
A12 Construction Dispute                                (A)
A14 Interpleader                                            (F)
BA1 Governance, Conduct, Internal
Affairs of Entities                                  (A)
BA3 Liability of Shareholders, Directors,
Officers, Partners, etc.                            (A)
BB1 Shareholder Derivative                          (A)
BB2 Securities Transactions                          (A)
BC1 Mergers, Consolidations, Sales of
Assets, Issuance of Debt, Equity, etc.  (A)
BD1 Intellectual Property                              (A)
BD2 Proprietary Information or Trade
Secrets                                               (A)
BG1 Financial Institutions/Funds                   (A)
BH1 Violation of Antitrust or Trade
Regulation Laws                                    (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an
explanation of the tracking deadlines for each track
designation: F, A, and X. On this page, the track
designation for each case type is noted in
parentheses.

†* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

‡ Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract        (A)
D02 Reach and Apply                                     (F)
D03 Injunction                                               (F)
D04 Reform/ Cancel Instrument                     (F)
D05 Equitable Replevin                                  (F)
D06 Contribution or Indemnification              (F)
D07 Imposition of a Trust                               (A)
D08 Minority Shareholder's Suit                     (A)
D09 Interference in Contractual Relationship  (F)
D10 Accounting                                             (A)
D11 Enforcement of Restrictive Covenant     (F)
D12 Dissolution of a Partnership                    (F)
D13 Declaratory Judgment, G.L. c. 231A       (A)
D14 Dissolution of a Corporation                    (F)
D99 Other Equity Action                                 (F)

### PA Civil Actions Involving Incarcerated Party ‡

PA1 Contract Action involving an
Incarcerated Party                              (A)
PB1 Tortious Action Involving an
Incarcerated Party                              (A)
PC1 Real Property Action involving an
Incarcerated Party                              (A)
PD1 Equity Action Involving an
Incarcerated Party                              (F)
PE1 Administrative Action involving an
Incarcerated Party                              (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
Injury/Property Damage                        (F)
B04 Other Negligence - Personal
Injury/Property  Damage                       (F)
B05 Products Liability                                    (A)
B06 Malpractice - Medical                             (A)
B07 Malpractice - Other                                 (A)
B08 Wrongful Death - Non-medical               (A)
B15 Defamation                                            (A)
B19 Asbestos                                                (A)
B20 Personal Injury - Slip & Fall                    (F)
B21 Environmental                                         (F)
B22 Employment Discrimination                    (F)
BE1 Fraud, Business Torts, etc.                     (A)
B99 Other Tortious Action                              (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential                (X)
S02 Summary Process - Commercial/
Non-residential                                   (F)

### RP Real Property

C01 Land Taking                                           (F)
C02 Zoning Appeal, G.L. c. 40A                     (F)
C03 Dispute Concerning Title                         (F)
C04 Foreclosure of a Mortgage                     (X)
C05 Condominium Lien & Charges                 (X)
C99 Other Real Property Action                     (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding                 (X)
E97 Prisoner Habeas Corpus                         (X)
E22 Lottery Assignment, G.L. c. 10, § 28       (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A  (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
G.L. c. 30A                                        (X)
E03 Certiorari Action, G.L. c. 249, § 4          (X)
E05 Confirmation of Arbitration Awards         (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9         (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8         (X)
E08 Appointment of a Receiver                     (X)
E09 Construction Surety Bond, G.L. c. 149,
§§ 29, 29A                                        (A)
E10 Summary Process Appeal                       (X)
E11 Worker's Compensation                          (X)
E16 Auto Surcharge Appeal                          (X)
E17 Civil Rights Act, G.L. c.12, § 11H           (A)
E24 Appeal from District Court
Commitment, G.L. c.123, § 9(b)          (X)
E94 Forfeiture, G.L. c. 265, § 56                   (X)
E95 Forfeiture, G.L. c. 94C, § 47                  (F)
E99 Other Administrative Action                    (X)
Z01 Medical Malpractice - Tribunal only,
G.L. c. 231, § 60B                             (F)
Z02 Appeal Bond Denial                               (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12      (X)
E14 SDP Petition, G.L. c. 123A, § 9(b)          (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall
state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the
statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as
otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may
file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND
## ACCURATELY, THE CASE MAY BE DISMISSED.

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2572CV00058 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>da Silva Teixeira, Jr., Jose Carlos vs. Hyannis Air Service, Inc. d/b/a Cape Air et al | Susan L. Moran<br>Barnstable County |
|---|---|

| TO: Rachel Smit, Esq.<br>Fair Work, P.C.<br>192 South St<br>Suite 450<br>Boston, MA 02111 | COURT NAME & ADDRESS<br>Barnstable County Superior Court<br>3195 Main Street<br>Barnstable, MA 02630 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

#### STAGES OF LITIGATION                    DEADLINE

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/08/2025 | |
| Response to the complaint filed (also see MRCP 12) | | 06/09/2025 | |
| All motions under MRCP 12, 19, and 20 | 06/09/2025 | 07/07/2025 | 08/06/2025 |
| All motions under MRCP 15 | 06/09/2025 | 07/07/2025 | 08/06/2025 |
| All discovery requests **and depositions** served and non-expert depositions completed | 12/04/2025 | | |
| All motions under MRCP 56 | 01/05/2026 | 02/02/2026 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/02/2026 |
| Case shall be resolved and judgment shall issue by | | | 02/08/2027 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>02/10/2025 | ASSISTANT CLERK<br>Robert Manning | PHONE |
|---|---|---|